IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

MICHAEL D. HUDSON,

      Petitioner,                       CASE NO. 2:09-cv-0030
                                           JUDGE SARGUS
v.                                    MAGISTRATE JUDGE ABEL

KEITH SMITH, Warden,

      Respondent.

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. This matter is before the Court on the instant petition, respondent's return of writ, petitioner's traverse, and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

## FACTS and PROCEDURAL HISTORY

The Ohio Tenth District Court of Appeals summarized the facts and procedural history of this case as follows:

> In 2001, appellant, his brother David Hudson ("Hudson"), Christopher Williams, Tony Wicks, and Steve Depasquale were all friends. They spent a lot of time together at an apartment on East 17th Avenue in Columbus, Ohio, that was rented by appellant's girlfriend, Keisha Barnett. Appellant and Williams sold marijuana out of the apartment that they purchased from a man named Garfield Commissiong.
>
> Sometime in early 2001, appellant, Williams, Hudson, Wicks and his girlfriend, Adeana Toles, had a conversation about robbing Commissiong. It is not clear who or what  initiated the conversa-

tion, but Toles thought that appellant started the talk after getting into a fight with Commissiong. According to Depasquale, appellant directed him to follow Commissiong to discover where he lived so that they could rob his house. To do this, appellant would call Commissiong and have him come over to the apartment to sell marijuana. Depasquale and others, including Hudson and Barnett, would be waiting outside the apartment in a car, ready to follow Commissiong after he left the apartment. They followed him a number of times to discover where Commissiong lived.

On the morning of May 7, 2001, appellant called Williams and told him to meet Commissiong at the East 17th Avenue apartment. Williams arrived at the apartment around noon; Hudson was already inside the apartment. Shortly thereafter, Commissiong came to the apartment. While Williams was upstairs, Hudson shot Commissiong in the leg. Commissiong was taken to a couch in the living room where he was handcuffed to a mountain bike. Williams took a shirt from Hudson and tied it around Commissiong's leg to try and stop the bullet wound from bleeding.

Within an hour, both appellant and Wicks arrived at the apartment. Commissiong remained in the living room handcuffed to the bike. Appellant called Barnett and Depasquale and asked them both to come to the apartment. When they arrived, appellant told them to go to Commissiong's apartment and search it for marijuana and money. They expected to find a large amount of marijuana in the apartment. Appellant gave them a key taken from Commissiong. Barnett drove Depasquale to an apartment at 2556 Spring Way Court, one of the apartments they had seen when they followed Commissiong. They entered the apartment and searched it but only found a small amount of marijuana. Depasquale also found some money that he kept for himself. In about an hour, they returned to the apartment on East 17th Avenue and gave appellant the marijuana they found. Depasquale told appellant that the large amount of marijuana they expected to find was not there. Depasquale left the apartment to go to class and then went home.

FN1 Although the evidence was conflicting, Hudson may also have gone to the apartment with Depasquale and Barnett.

Later in the evening, appellant called Depasquale again and asked him to return to the apartment. After he got there, appellant led a blindfolded and handcuffed Commissiong out of the apartment and into the back seat of his own car. Appellant drove Commissiong's car and Depasquale followed him in his own car. According to Depasquale, they drove for awhile until they went to a parking lot where appellant parked the car. Depasquale pulled his car up behind appellant and watched appellant get out of the car, open the back door and shoot a gun at Commissiong. Appellant then got in Depasquale's car and the two returned to the East 17th Avenue apartment. After he got back to the apartment, Wicks overheard appellant telling Williams that he "took care of it."

In the early morning hours of May 8, 2001, police officers were called to a business on Lamb Road in Columbus, Ohio, to respond to a burglary alarm. In the Barnett. business' parking lot, Officer Amy Welsh observed a running car in the parking lot. She saw a person in the back seat that appeared to be asleep. She soon discovered that the man, later identified as Commissiong, was dead. He was handcuffed and also had a shirt tied around his leg. The police discovered five spent shell casings in the car. The casings were all .380 caliber. Williams testified that after these events, the gun that they kept at the East 17th Avenue apartment, a .380 pistol, was gone. An autopsy revealed that Commissiong had been shot 8 times, including two fatal wounds.

As a result of these events, a Franklin County Grand Jury indicted appellant 2 for three counts of aggravated murder in violation of R.C. 2903.01. Each of those counts contained a death penalty specification. Appellant was also indicted for one count of kidnapping in violation of R.C. 2905.01, one count of aggravated burglary in violation of R.C. 2911.11, one count of aiding or abetting another in committing aggravated burglary in violation of R.C. 2923.03, one count of aggravated robbery in violation of R.C. 2911.01, one count of tampering with evidence in violation

3

of R.C. 2921.12, one count of intimidation of a witness in violation of R.C. 2921.04, and one count of having a weapon under disability in violation of R.C. 2923.13. Each of the aggravated murder, aggravated burglary, and aggravated robbery counts contained firearm and repeat violent offender specifications.

FN2 The grand jury also indicted Hudson in the same indictment.

Appellant entered a not guilty plea to the counts and proceeded to a jury trial. Before trial, at  the State's request, the trial court dismissed the weapon under disability count as well as the repeat violent offender specifications from the indictment. The trial court also dismissed one of the aggravated murder counts and amended the two counts involving aggravated burglary to burglary. At trial, Williams, Depasquale and Wicks testified against appellant and described his involvement with Commissiong's death. The testimony described appellant as the leader of the plan to rob Commissiong. The jury ultimately found appellant guilty of one count of kidnapping and one count of burglary with a firearm specification of the Spring Way Court apartment. The jury found appellant not guilty of the remaining counts. The trial court sentenced appellant to consecutive, maximum prison terms of ten years for the kidnapping conviction and eight years for the burglary conviction.

FN3 The trial court also imposed an additional one-year prison term for appellant's firearm specification conviction.

*State v. Hudson*, 2007 WL 1821702 (Ohio App. 10th Dist. June 27, 2007), *Exhibit 14 to Return of Writ.* Petitioner filed a timely appeal, in which he raised the following assignments of error:

1. The trial court erred in entering judgment of conviction for Count 7 (Burglary of 2556 Spring Way Court) and Count 8 (Kidnapping of Garfield Commissiong) because those convictions are against the manifest weight of the evidence.

2.  The Court of Common Pleas violated appellant's right to trial by jury by sentencing appellant to a term of incarceration which

4

exceeded the statutory maximum mandated by the Sixth and Fourteenth Amendments. The decision rendered by the Supreme Court of Ohio in *State v. Foster* (2006), 109 Ohio St.3d 1, 2006 Ohio 856, 845 N.E.2d 470 which purports to authorize sentences in excess of the statutory maximum, is incompatible with the controlling precedent of the United States Supreme Court and must be rejected.

3.  The Court of Common Pleas violated appellant's rights under the Ex Post Facto Clause of the Federal Constitution by sentencing appellant to a term of incarceration which exceeded the maximum penalty available under the statutory framework at the time of the offense. The decision rendered by the Supreme Court of Ohio in *State v. Foster* (2006), 109 Ohio St.3d 1, 2006 Ohio 856, 845 N.E.2d 470, which purports to authorize sentences rendered against defendant * * *, is incompatible with the controlling precedent of the United States Supreme Court and must be rejected.

4.  The Court of Common Pleas violated appellant's rights under the Fourteenth Amendment to the Federal Constitution by sentencing appellant pursuant to the decision rendered by the Supreme Court of Ohio in *State v. Foster* (2006), 109 Ohio St.3d 1, 2006 Ohio 856, 845 N.E.2d 470, because the holding of Foster is invalid under *Rogers v. Tennessee* (2001), 532 U.S. 451, 121 S. Ct. 1693, 149 L. Ed. 2d 697.

5.  The rule of lenity requires the imposition of minimum and concurrent sentences, and the ruling of the Court of Common Pleas to the contrary must be reversed.

6.  The sentence imposed upon Defendant Hudson was an abuse of discretion.

*See id.* On June 26, 2007, the state appellate court affirmed the trial court's judgment. *Id.* On

October 24, 2007, the Ohio Supreme Court dismissed petitioner's subsequent appeal. *State v.*

*Hudson*, 115 Ohio St.3d 1444 (2007).

5

Meanwhile, petitioner filed an application to reopen his appeal pursuant to Ohio Appellate Rule 26(B).  He asserted as follows:

> 1.   Appellate counsel rendered ineffective assistance to the prejudice of appellant when he failed to raise on direct appeal that appellant's convictions for kidnapping and aiding and abetting burglary are not supported by sufficient evidence.
>
> 2.   Appellate counsel rendered ineffective assistance to the prejudice of appellant when he failed to raise on direct appeal that the imposition of a firearm specification was not supported by sufficient evidence.
>
> 3.   Appellate counsel rendered ineffective assistance to the prejudice of appellant when he raised two frivolous assignments of error on direct appeal.

*Exhibit 18 to Return of Writ.*  On December 20, 2007, the appellate court denied petitioner's Rule 26(B) application.  *Exhibit 20 to Return of Writ.*  Petitioner did not timely appeal.  He attempted to file a delayed appeal, but in a letter dated May 21, 2008, the Ohio Supreme Court returned petitioner's filing, notifying him that the Rules of Practice of the Ohio Supreme Court do not permit delayed appeals in Rule 26(B) proceedings.  *See Exhibit 21 to Return of Writ.*  On July 16, 2008, petitioner filed a motion for reconsideration with the state appellate court, on the basis that he did not receive timely notification of the appellate court's decision.  *Id.*  On July 24, 2008, the appellate court denied petitioner's motion for relief from judgment.  *Exhibit 22 to Return of Writ.*  On December 3, 2008, the Ohio Supreme Court dismissed petitioner's subsequent appeal of that decision.

On January 14, 2009, petitioner filed the instant petition for a writ of habeas corpus

pursuant to 28 U.S.C. §2254.  He alleges that he is in the custody of the respondent in violation of the Constitution of the United States based upon the following grounds:

> 1.  Ineffective appellate counsel, a violation of petitioner's Sixth Amendment rights to the U.S. Constitution.
>
> Counsel failed to argue insufficient evidence claims on direct appeal.  Counsel also failed to challenge the court's imposition of a firearm specification.  Counsel's failures compounded the due process violations that petitioner has already suffered.
>
> 2.  Petitioner's conviction for kidnapping is based on insufficient evidence.  A violation of petitioner's Fourteenth Amendment.
>
> Petitioner was charged and convicted of 2905.01 section (A), (2),(3).  But the jury made a further finding that petitioner was [illegible] guilty of (2),(3).  These are the essential elements to 2305.01 section (A).  How can petitioner's conviction for 2905.01 section (A) stand when a jury found petitioner not guilty of the essential elements of the charge for which petitioner was convicted. It is petitioner's belief that the jury didn't understand or know the law, which is evidence by this conflicting verdict.  The state failed to prove the elements of 2905.01 section (A) 2, 3 beyond a reasonable doubt.  I[n] fact the elements were disproven by the jury when they unanimously found petitioner not guilty of 905.01 section (A), (2), (3).
>
> 3.  Petitioner's conviction for aiding and abetting burglary is based on insufficient evidence.
>
> All of the state's witnesses were directly related to the criminal acts against the victim.  Their testimony sharply diverged from one another.  Presenting the jury with a vast complex and conflicting back drop of the case it is petitioner's contention that the jury lost its was in resolving the conflicting testimony that was presented at trial which is evident with the jury finding petitioner guilty of kidnapping but being found not of the elements to which he was charged.

> 4.  Petitioner's conviction for a firearm specification is based on insufficient evidence.  A Fourteenth Amendment violation.
>
> Petitioner was charged and convicted of a firearm specification of a firearm which was never proven to be in existence.  It was stolen out of the burglary of the apartment and never recovered to prove it was an operable firearm.  The firearm in question was not used in the commission of the burglary, it was the object of theft.  There is no evidence in the record to prove the firearm was used in the commission of the burglary which would imply the firearm was operable.  Nor is there any evidence in the record that the firearm was recovered to prove it was operable.  The state failed to prove the firearm was operable.

It is the position of the respondent that all of petitioner's claims are procedurally defaulted.

## PROCEDURAL DEFAULT

In claims two, three, and four, petitioner asserts that the evidence was constitutionally insufficient to sustain his convictions on kidnapping and aiding and abetting burglary with a firearm specification.  In claim one, petitioner asserts that he was denied the effective assistance of appellate counsel because his attorney failed to raise these claims on appeal.

Respondent contends that claims two, three and four are procedurally defaulted because petitioner did not present these claims on direct appeal, and claim one is procedurally defaulted because petitioner failed to file a timely appeal of the appellate court's December 20, 2007, decision denying his Rule 26(B) application to the Ohio Supreme Court.

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required fairly to

8

present those claims to the highest court of the state for consideration. 28 U.S.C. § 2254(b), ©. If he fails to do so, but still has an avenue open to him by which he may present the claims, his petition is subject to dismissal for failure to exhaust state remedies. *Id.; Anderson v. Harless,* 459 U.S. 4, 6 (1982) (*per curiam); Picard v. Connor*, 404 U.S. 270, 275-76 (1971). If, because of a procedural default, the petitioner can no longer present his claims to a state court, he has also waived them for purposes of federal habeas review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error. *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle v. Isaac*, 456 U.S. 107, 129 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is precluded by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir.1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id.* Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id.* Third, it must be decided whether the state procedural forfeiture is an 'adequate and independent' state ground on which the state can rely to foreclose review of a federal constitutional claim. *Id.* Finally, if the Court has determined that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged

constitutional error. *Id*.

Petitioner failed to raise on direct appeal his on-the-record claims that the evidence was constitutionally insufficient to support the convictions. Instead, he argued an Ohio law claim that his convictions were against the manifest weight of the evidence; and he did not thereby preserve his federal insufficiency of the evidence claim for federal habeas corpus review. He may now no longer present a sufficiency of the evidence claim to the state courts under Ohio's doctrine of *res judicata*. *State v. Cole*, 2 Ohio St.3d 112 (1982); *State v. Ishmail*, 67 Ohio St.2d 16 (1981); *State v. Perry*, 10 Ohio St.2d 175 (1967). The state courts were never given the opportunity to enforce the procedural rule at issue due to the nature of petitioner's procedural default. Additionally, the United States Court of Appeals for the Sixth Circuit has consistently held that Ohio's doctrine of *res judicata, i.e.*, the *Perry* rule, is an adequate ground for denying federal habeas relief. *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006); *Coleman v. Mitchell*, 268 F.3d 417, 427-29 (6th cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 555 (6th Cir. 2000); *Byrd v. Collins*, 209 F.3d 486, 521-22 (6th Cir. 2000); *Norris v. Schotten*, 146 F.3d 314, 332 (6th Cir. 1998). The doctrine of *res judicata* is stated in unmistakable terms in countless Ohio decisions and Ohio courts have consistently refused, in reliance on that doctrine, to review the merits of claims. *See State v. Cole, supra; State v. Ishmail, supra*. Further, the doctrine of *res judicata* serves the state's interest in finality and in ensuring that claims are adjudicated at the earliest possible opportunity. With respect to the independence prong, the Court concludes that *res judicata* does not rely on or otherwise implicate federal law.

As cause for his procedural default and in claim one of his habeas corpus petition, petitioner asserts the ineffective assistance of counsel. The ineffective assistance of counsel may constitute cause for a procedural default, so long as the claim has not also been waived. *Edwards v. Carpenter*, 529 U.S. 446, 451-53 (2000). Petitioner raised his claim of ineffective assistance of counsel in Rule 26(B) proceedings; however, he failed to file a timely appeal to the Ohio Supreme Court. Further, Ohio does not permit delayed appeals in Rule 26(B) proceedings. *See* Ohio Supreme Court Rule of Practice II, Section 2(A)(4)(c).[1] Therefore, petitioner's ineffective assistance of appellate counsel claim is also procedurally defaulted, and cannot constitute cause for the procedural default of petitioner's claims of insufficiency of the evidence. *See Seymour v. Walker*, 224 F.3d 542, 550 (6th Cir. 2000)(the alleged ineffective assistance of appellate counsel cannot constitute cause for a procedural default where that claim was not properly presented to and ruled on by the Ohio courts.)

As cause for his failure to file a timely appeal to the Ohio Supreme Court in Rule 26(B) proceedings, petitioner states that he did not learn, until April 7, 2008, that his Rule 26(B) application had been denied on December 20, 2007. Thereafter, on May 21, 2008, he attempted to file an appeal to the Ohio Supreme Court, but his appeal was returned as untimely. He then filed a motion for reconsideration with the Ohio Court of Appeals, and on August 20, 2008, filed

---

[1] Ohio Supreme Court Rule of Practice II, Section 2(A)(4)(c) provides: The provision for delayed appeal applies to appeals on the merits and does not apply to appeals involving postconviction relief, including appeals brought pursuant to *State v. Murnahan* (1992), 63 Ohio St.3d 60, 584 N.E.2d 1204, and App.R. 26(B). The Clerk shall refuse to file motions for delayed appeal involving postconviction relief.

an appeal of the appellate court's denial of his motion for reconsideration to the Ohio Supreme Court.  *See Traverse.*

In support of these allegations, petitioner refers to a letter dated April 22, 2008, from the Office of the Franklin County Public Defender which indicates in relevant part as follows:

> I have discussed your case with one of our appeals attorneys.... He agrees, and the records appear to show, that you were never properly served with notice of the denial of your application to reopen your appeal.  Since you are clearly listed as *pro se*, it seems likely that this was a simple procedural error in the clerk's office, but the fact remains that nothing was ever mailed to you.

*See Exhibit 2A to Traverse.*

"[P]etitioner has the burden of showing cause and prejudice to overcome a procedural default." *Hinkle v. Randle,* 271 F.3d 239, 245 (6th Cir.2001), citing *Lucas v. O'Dea,* 179 F.3d 412, 418 (6th Cir.1999)(internal citation omitted).

> '[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him[;] ... some objective factor external to the defense [that] impeded ... efforts to comply with the State's procedural rule." *Coleman v. Thompson*, 501 U.S. 722, 753, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

*Maples v. Stegall*, 340 F.3d 433, 438 (6th Cir.2003). A habeas corpus petitioner's *pro se* status, or  "ignorance of the law and procedural requirements for filing a notice of appeal" do not constitute cause for a procedural default." *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir.2004), citing *Hannah v. Conley,* 49 F.3d 1193, 1197 (6th Cir.1995); To establish cause, petitioner "must

present a substantial reason that is external to himself and cannot be fairly attributed to him."
*Hartman v. Bagley,* 492 F.3d 347, 358 (6th Cir.2007), citing *Jamison v. Collins,* 291 F.3d 380, 386
(6th Cir.2002) (holding that the prosecution's withholding of *Brady* evidence qualified as a
"substantial reason for the default that is external to [the petitioner]"). *See also, Maples v. Stegall,*
*supra,* 340 F.3d at 438-39 (failure by prison officials to promptly deliver legal mail may
constitute cause for procedural default); *but see Martin v. Vannatta,* unpublished, 175 Fed.Appx.
45 (7th Cir. Mar. 23, 2006)(inadequate funds for postage did not constitute cause for prisoner's
untimely filing where he could have obtained free postage);  *Smith v. Ohio Department of*
*Rehabilitation and Correction,* 331 F.Supp.2d 605, 618 (N.D. Ohio 2004)(counsel's failure to
provide timely notification of appellate court's decision does not constitute cause for untimely
appeal to Ohio Supreme Court where petitioner had no right to the assistance of counsel).

Even assuming that petitioner can establish cause for his procedural default, in any event,
he cannot establish prejudice, because he has failed to demonstrate that he was denied the
constitutionally effective assistance of appellate counsel.

The state appellate court rejected petitioner's claim that his kidnapping and aiding and
abetting a burglary convictions were against the manifest weight of the evidence as follows:

> The State claimed that appellant aided and abetted the burglary of
> 2556 Spring Way Court. In order to convict appellant of aiding and
> abetting burglary, the State had to demonstrate that appellant aid-
> ed or abetted others who, by force, stealth, or deception, trespass-
> ed in an occupied structure or in a separately secured or separately
> occupied portion of an occupied structure, when another person

13

other than an accomplice of the offender is present or likely to be present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense. R.C. 2923.02(A); 2911.12(A). The State alleged that the criminal offense intended to be committed inside the structure was theft. In order to commit a theft, the State had to prove that he purposely deprived the owner of property by knowingly obtaining or exerting control over the property without the consent of the owner. R.C. 2913.02(A)(1).

In order to convict appellant of kidnapping, the State had to demonstrate that appellant, by force, threat, or deception, did, by any means: remove Commissiong from the place he was found or restrain Commissiong of his liberty, with the purpose to facilitate the commission of a felony or flight thereafter or to terrorize or inflict serious physical harm on Commissiong. R.C. 2905.01(A). The State theorized that appellant acted with the intent to commit murder or to inflict serious physical harm on Commissiong.

Appellant initially claims that his convictions were against the manifest weight of the evidence because the State's witnesses were not credible, as they were dishonest, convicted felons who received lesser prison sentences in exchange for their testimony against appellant. We disagree.

A number of the State's witnesses were convicted felons who were also charged with and pled guilty to crimes arising from Commissiong's death. Williams had previous convictions for attempted drug trafficking, domestic violence, and providing false information to a public official. He entered into a plea agreement with the State to plea guilty to burglary and abduction charges arising from Commissiong's death. He received a six-year total prison sentence. Depasquale entered into a plea agreement with the State to resolve charges arising out of this case and other unrelated cases.FN4 In regards to this case, he pled guilty to a count of burglary. He received a 15-year total prison sentence for the convictions and agreed to testify truthfully in this case. Wicks also entered into a

14

plea agreement with the State to resolve charges arising out of this case and an unrelated case.FN5 In regard to this case, he pled guilty to a count of burglary. He received probation for those convictions and agreed to testify truthfully against appellant. Toles had an unrelated felony conviction for attempted illegal conveyance of marijuana. It does not appear from the record that she was charged with any crimes arising from Commissiong's death.

FN4. Those other cases involved a felony charge of trafficking in drugs, felonious assault, and failure to comply with an order of an officer.

FN5. That other case involved a felony charge of trafficking in drugs.

The jury heard testimony from these witnesses and was aware of their prior convictions and that most of them entered into plea agreements with the State to resolve charges arising out of these events as well as unrelated crimes. They were also aware of the prison sentences the witnesses received as a result of those plea agreements. The jury, however, was in the best position to weigh and determine the credibility of those witnesses and was entitled to believe or disbelieve the testimony from those witnesses. *State v. Woodward*, Franklin App. No. 03AP-398, 2004-Ohio-4418, at ¶ 19-20; *State v. Williams,* Miami App. No.2004-CA-6, 2004-Ohio-6218, at ¶ 22; *State v. McNeal* (Nov. 2, 2001), Hamilton App. No. C-000717. Their testimony was not so uncredible as to render appellant's convictions against the manifest weight of the evidence.

Appellant also specifically contends that Depasquale's testimony, as it related to the burglary conviction, was not credible because the jury obviously did not believe his testimony that appellant murdered Commissiong. We disagree. The jury is free to believe or disbelieve any or all of a witnesses' testimony. *Jackson, supra*. Here, it was within the province of the jury to believe some of Depasquale's testimony but disbelieve other portions of his

15

testimony. The jury obviously believed Depasquale's testimony that appellant directed him to burglarize Commissiong's apartment but disbelieved his testimony that appellant killed Commissiong. This is within the province of the jury and does not render appellant's convictions against the manifest weight of the evidence.

The weight of the evidence demonstrates that appellant aided and abetted the burglary of Spring Way Court. Before the day of the burglary, he directed Depasquale and others to follow Commissiong in order to discover where he lived so that they could rob his home. On May 7, appellant gave Depasquale and Barnett a key to Commissiong's apartment and told them to go to the apartment and search it for marijuana and money. Depasquale testified that he took marijuana and money from the apartment. The jury did not clearly lose its way when it convicted appellant of aiding or abetting the burglary of the Spring Way Court apartment.

Similarly, the weight of the evidence also supports appellant's kidnapping conviction. Testimony indicates that appellant led a blindfolded and handcuffed Commissiong out of the apartment and into a car. Appellant then drove the car to a parking lot where Commissiong was found dead in the back seat of the car. It is not against the manifest weight of the evidence for a jury to believe that appellant removed Commissiong from the apartment with the intent to murder or to inflict serious physical harm on him. Toles testified that appellant mentioned killing Commissiong in the first conversation they had regarding robbing him. Wicks also testified that although appellant told Commissiong that he was going to let him go, he told Williams that he did not want to let him go. While the jury obviously did not believe that appellant fired the fatal shots, their determination that appellant took Commissiong to the parking lot with the intent to murder or to inflict serious physical harm on Commissiong is not against the manifest weight of the evidence.

This is not the exceptional case where the evidence weighs heavily against the convictions. Accordingly, appellant's convictions are

not against the manifest weight of the evidence, and his first assignment of error is overruled.

*State v. Hudson, supra*, 2007 WL 1821702.  The state appellate court then rejected petitioner's

claim of ineffective assistance of appellate counsel as follows:

> Defendant [] claims that his appellate counsel was ineffective for failing to contest the sufficiency of the evidence supporting his convictions for kidnapping and aiding and abetting burglary as well as the firearm specification.  We disagree.  It is well settled that an appellate attorney has wide latitude and thus the discretion to decide which issues and arguments will prove most useful on appeal.... Additionally appellate counsel is not required to argue assignments of error which are meritless....
>
> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.  The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt....
>
> The testimony presented at defendant's trial, when viewed in a light most favorable to the State, indicated that defendant was the leader of a group of people who plotted to rob Garfield Commissiong.  To prepare for the robbery, defendant ordered people to follow Commissiong to learn where his house was.  One day, defendant's brother shot Commissiong in the leg and kept him tied up in a house.  Defendant came to the house and sent other people to Commissiong's house to look for drugs and money they thought would be in the house.  One of the people stole a gun while in the house.

> Given this evidence, and the applicable standard of review governing the sufficiency of the evidence, appellate counsel could have concluded that a sufficiency argument was not worth pursuing as to his convictions for kidnapping and aiding and abetting burglary.  Similarly, counsel could also have concluded that a sufficiency argument was not worth pursuing as to his conviction for the firearm specification....
>
> Counsel's decision to forgo these sufficiency arguments was well within appellate counsel's discretion whether or not to raise issues on appeal....Defendant has not demonstrated that appellate counsel was ineffective for failing to raise assignments of error contesting the sufficiency of the evidence supporting his two convictions and the firearm specification.

*Exhibit 14 to Return of Writ.*

The factual findings of the state appellate court are presumed to be correct.  28 U.S.C. § 2254(e)(1) provides:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

Further, a federal habeas court may not grant relief unless the state court's decision was contrary to or an unreasonable application of clearly established federal law, or based on an unreasonable determination of the facts in light of the evidence that was presented. 28 U.S.C. §2254(d) provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

As summarized by the United States Court of Appeals for the Sixth Circuit:

The United States Supreme Court outlined the proper application of § 2254(d) in *Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). To justify a grant of habeas relief under the "contrary to" clause, "a federal court must find a violation of law clearly established by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision." *Miller [v. Francis],* 269 F.3d 609[,] 614 [ (6th Cir.2001) ] (internal quotations omitted) (citing *Williams,* 529 U.S. at 413, 120 S.Ct. 1495, 146 L.Ed.2d 389). Under the "unreasonable application" clause, a federal habeas court may grant the writ "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 614 (quoting *Williams,* 529 U.S. at 412, 120 S.Ct. 1495, 146 L.Ed.2d 389). Even if a federal court could determine that a state court incorrectly applied federal law, the court still could not grant relief unless it also finds that the state court ruling was unreasonable. *Simpson v. Jones,* 238 F.3d 399, 405 (6th Cir.2000).

*Cristini v. McKee,* 526 F.3d 888, 897 (6th Cir.2008).  Petitioner has failed to meet this standard here.

19

The right to counsel guaranteed by the Sixth Amendment is the right to the effective assistance of counsel. *McMann v. Richardson,* 397 U.S. 759, 771 n. 14 (1970). The standard for demonstrating a claim of ineffective assistance of counsel is composed of two parts:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland,* 466 U.S. at 687. Scrutiny of defense counsel's performance must be "highly deferential." *Id.* at 689.

With respect to the first prong of the *Strickland* test, "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* To establish the second prong of the *Strickland* test, prejudice, a petitioner must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Because petitioner must satisfy both prongs of the *Strickland* test to demonstrate ineffective assistance of counsel, should the court determine that petitioner has failed to satisfy one prong, it need not consider the other. *Id.* at 697.

The *Strickland* test applies to appellate counsel. *Burger v. Kemp,* 483 U.S. 776, 781-82

20

(1987). Counsel must provide reasonable professional judgment in presenting the appeal. *Evitts v. Lucey,* 469 U.S. 387, 396-97 (1985). " '[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray,* 477 U.S. 527, 536 (1986) ( *quoting Jones v. Barnes,* 463 U.S. 745, 751-52 (1983)). The Court of Appeals for the Sixth Circuit has identified the following considerations that ought to be taken into account in determining whether counsel on direct appeal performed reasonably competently:

1. Were the omitted issues "significant and obvious?"

2. Was there arguably contrary authority on the omitted issues?

3. Were the omitted issues clearly stronger than those presented?

4. Were the omitted issues objected to at trial?

5. Were the trial court's rulings subject to deference on appeal?

6. Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?

7. What was appellate counsel's level of experience and expertise?

8. Did the Petitioner and appellate counsel meet and go over possible issues?

9. Is there evidence that counsel reviewed all the facts?

10. Were the omitted issues dealt with in other assignments of error?

11. Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

*Mapes v. Coyle,* 171 F.3d 408, 427-28 (6th Cir.1999). This list is not exhaustive and need not produce a certain "score." *Id.* at 428.

In *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the United States Supreme Court held that as a matter of fundamental due process, a criminal conviction cannot stand unless each essential element is proven beyond a reasonable doubt. The Supreme Court explained that when reviewing a challenge to the constitutional sufficiency of the evidence supporting a criminal conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. The Supreme Court cautioned, with respect to the role of a reviewing court, that "[t]his familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.*

Petitioner does not dispute the factual findings of the state appellate court. Instead, he argues that the evidence was constitutionally insufficient to sustain his convictions because the witnesses gave conflicting testimony, were unreliable or unbelievable, and because the jury acquitted him of other charges against him. These arguments are more properly considered under a claim that his convictions were against the manifest weight of the evidence, as was argued by appellate counsel in this case.[2]

---

[2]  Under Ohio law, a claim that a verdict was against the manifest weight of the evidence-as opposed to one based upon insufficient evidence-requires the appellate court to act as a "thirteenth juror" and review the entire record, weight the evidence, and consider

Petitioner also contends that there was no evidence to sustain his conviction on the firearm specification, due to a lack of evidence that the firearm was operable.  This claim also fails.

Petitioner was convicted of aiding and abetting burglary with a firearm specification under O.R.C. §2941.145:

> R.C. 2941.145(A) reads, in pertinent part:
>
> "Imposition of a three-year mandatory prison term * * * is precluded unless the indictment, count in the indictment, or information charging the offense specifies that the offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense. * * * "
>
> Moreover, R.C. 2923.11(B)(1) defines "firearm" as "any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. 'Firearm' includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable."
>
> From the preceding statutory language, it is patent that a threshold requirement for charging a firearm specification is the existence of a firearm on or about the offender's person or under his control.

---

the credibility of witnesses to determine whether "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983); *cf. Tibbs v. Florida,* 457 U.S. 31 (1982). "Evidence may be sufficient to support a conviction, and yet, the conviction may be against the manifest weight." *Rutledge v. Lazaroff,* 2007 WL 928638 (S.D. Ohio March 27, 2007), citing *State v. Thompkins,* 78 Ohio St.3d 380 (1997).

> As such, possession of a firearm, as defined by R.C. 2923.11(B)(1), is sine qua non for a conviction under R.C. 2941 .145(A). In order to establish that a weapon is a firearm under R.C. 2923.11(B)(1), the state is required to establish (1) that the weapon is capable of expelling or propelling projectiles by the action of an explosive propellant and (2) the firearm's operability. As such, absent evidence establishing that a weapon propels objects via a combustible propellant and the firearm in question is operable, a firearm specification cannot be proved beyond a reasonable doubt. See *State v. Gaines* (1989), 46 Ohio St.3d 65, 545 N.E.2d 68, at syllabus.

*State v. Kovacic*, 2003 WL 22235360 (Ohio App. 11th Dist. September 30, 2003).  However, Depasquale testified that petitioner aided and abetted in the burglary of Commissiong's apartment, during which time Commissiong was shot in the leg.  Construing this evidence in the light most favorable to the prosecution, therefore, the evidence was constitutionally sufficient to sustain petitioner's conviction on the firearm specification.   Additionally, and for the reasons addressed by the state appellate court, this Court agrees that, when viewing all of the evidence in the light most favorable to the prosecution, the evidence was plainly constitutionally sufficient to sustain petitioner's convictions on kidnapping and aiding and abetting burglary. Therefore, petitioner has failed to establish that he was denied the effective assistance of counsel because his attorney failed to raise such claim on appeal.  Claim one is without merit.  He likewise has failed to establish cause and prejudice for his procedural default of claims two through four.

For all the foregoing reasons, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

If any party objects to this *Report and Recommendation,* that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

s/Mark R. Abel_____
United States Magistrate Judge